# EVANS v. GAISFORD.

No. 7776.   Decided August 13, 1952.   (247 P. 2d 431.)

See 6 C. J. S., Assault and Battery, sec. 40. Exemplary damages for Assault. 4 Am. Jur., Assault and Battery, secs. 187 et seq.; 16 A. L. R. 771.

*Critchlow, Watson & Warnock, Ned Warnock, George A. Critchlow, A. W. Watson,* Salt Lake City, for appellant.

*Young, Young & Sorensen,* Provo, for respondent.

CROCKETT, Justice.

Defendant, A. Frank Gaisford, rushed out of a drug store entrance on Main Street of American Fork, assaulted

and beat plaintiff in the face and about the head with his fists, meanwhile angrily calling him bad names. Plaintiff did not attempt to strike back nor retaliate in any way except to avoid being hit. His glasses were knocked off and he suffered some severe blows. The affray naturally attracted the attention of others, including the mayor, the clerks and customers of the drug store, and a peace officer.

A jury awarded plaintiff $500 special damages, $500 general damages, and $1,499.95 punitive damages. The trial court required remittitur of $100 of the general and $499.95 of the punitive damages, or in the alternative ordered a new trial. Plaintiff accepted the reduction.

Defendant appeals on two principal grounds: first, that the damages awarded were so excessive that it is manifest that they resulted from passion and prejudice; and second, that certain items of evidence were improperly admitted.

Wherever the evidence conflicts, we view it favorably to the plaintiff. Defendant is a long-time resident of Utah County and has been in the newspaper publishing, advertising and printing business in American Fork since 1928. He had no local competition until 1947 when the plaintiff moved there and started a similar business. The plaintiff's evidence is that the defendant resented the plaintiff from the beginning; that he never addressed him civilly, and that at times he called plaintiff bad names. The plaintiff printed in his paper some criticisms of defendant and his methods of obtaining business. The antagonisms developing from this situation culminated in the attack referred to. Because a discussion of the evidence objected to also bears on the question of damages, it seems best to treat rulings on evidence before dealing with the problem of damages.

Defendant contends that the court was in error in permitting plaintiff to tell about his arrival in American Fork for health reasons; setting up his printing shop in a chicken coop; relating conversations had with the defendant over a period of two and a half years in

which the defendant had used abusive language to him, indicated his displeasure over having a competitor, and had tried to force him out of business.

The theory of the plaintiff's case, which the jury's verdict indicated they believed, was that the defendant resented plaintiff not only as a competitor in business, but also on account of the editorial attacks made by plaintiff upon his business methods and that because of such resentment defendant maliciously attacked him. Where this issue is present in a case, there can be no question but that facts, statements and conduct on the part of the defendant which would tend to show malice are admissible.

In *Baker* v. *Peck*, 1 Cal. App. 2d 231, 36 P. 2d 404, 405, the court said:

"* * * The evidence (of a previous meeting and discussion between the parties) was properly received, as tending to show the attitude and state of mind toward plaintiff. One of the issues before the jury was whether the defendant struck plaintiff with malice. * * * it was therefore proper for plaintiff to show any act or statement of defendant that might bear upon that issue. * * *"

and, in *West* v. *Bentley*, 98 Utah 248, 98 P. 2d 361, 362, this court announced the rule:

"* * * That motive or malice may be shown in an action such as this is elemental. For such purpose prior occurrences, and both prior and subsequent declarations, acts and conduct may be shown and received in evidence if they are related to the assault, or tend to show or are indicative of a feeling of ill will, or to furnish a motive for the acts of which complaint is made. * * *"

Defendant says that the evidence concerning the establishment of plaintiff's business, and its being set up in a chicken coop over-emphasized the poverty and struggle of the plaintiff. Actually it was but a recitation of the historical facts concerning the establishment and location of his business as a competitor of the defendant and bears upon the relations as they existed and developed between these parties. It indicated that plaintiff's business rose

from a small beginning where it was very little threat to defendant's business to a situation of ever-increasing competition. This is relevant as touching upon the issue of ill will and resentment claimed by plaintiff and which other evidence shows existed on the part of the defendant. Further, he introduced evidence to show that his newspaper now produces a substantial income which would tend to refute any such impression of poverty which might have been created by the other testimony. Should it be assumed that the evidence does emphasize plaintiff's poverty, as defendant suggests, there still would be no impropriety in having admitted it. Where the charge is that the act was done with malice, and exemplary damages are sought, the financial circumstances and social standing of the parties may be shown. 8 R. C. L. 634; 4 Am. Jur. 201 & 2; 6 C. J. S., Assault and Battery, § 41, p. 859; 16 A. L. R. 842.

Another item of evidence objected to by the defendant is the testimony of Louis M. Rowe, who was permitted to testify to a conversation with the defendant about Rowe's advertising. When Gaisford solicited him, Mr. Rowe stated that he would split his advertising fifty-fifty between the plaintiff and the defendant. According to Rowe, defendant then stated:

"That isn't the way  *  *  *.  I am to get it all and he [Evans] is to get none of it."

This statement was also competent and relevent as showing defendant's attitude toward plaintiff.

The question of the remoteness of the various conversations from the assault was within the discretion of the trial court.

Certain cross-examination complained about pertained to defendant's membership on the Board of Directors of the American Fork Hospital and the alleged innuendo that he violated the law by accepting printing contracts.

"Q. You are a member of the board that awards that contract? A. Yes, sir.

"Q. You know that is contrary to the law, don't you? A. No, sir. It is not contrary to the law.

Respective counsel then engaged in a dispute as to whether this was a violation of the law. The question was put again and the court sustained the objection. The matter was not pursued further by either side. The facts shown were pertinent as bearing on the editorial criticism plaintiff had leveled at defendant concerning this matter, and the issue of resentment and malice hereinbefore referred to.

As to the damages: Defendant maintains that the award of punitive damages in the sum of $1,499.95 was the result of passion and prejudice, and that even as reduced by the trial court to $1,000 they bear no reasonable relation to the actual damages awarded. He argues that the ratio between actual and punitive damages must be such that the punitive amount to only a small part of the actual; he suggests a ratio of one to four or five. No authority is cited which supports this contention. Our attention is called to the recent case of *Mecham* v. *Foley*, 120 Utah 416, 235 P. 2d 497, wherein this court reduced a verdict for general damages from $1,000 to $500, the punitive damages being $100. Defendant says:

"Surely if this court felt that the $100.00 was sufficient punishment * * * there can be no justification for assessment of $1,000.00 punitive damages here."

The above statement represents an inversion of the action of this court with respect to punitive damages for the purpose of making it seem to support defendant's contention. The fact is that the $100 was set by the trial court (trier of the fact) in the Foley case. This court took no action upon it and had no alternative other than to approve it. In that case the plaintiff had a reputation for being belligerent and quarrelsome; had fought and argued with

numerous persons, including others who worked for the irrigation company, joint defendant in the case. The plaintiff had suffered very moderate injury. Upon that record, it was only in deference to the "any substantial evidence" rule favoring the trier of the fact that the award was affirmed. Accordingly, the court felt justified in exercising its discretion to reduce the general damages as above mentioned.

In the present case, the facts are entirely different. The defendant was a man of considerable prominence and financial substance. As plaintiff approached along the street, defendant stepped into the doorway of the drug store and lay in wait for plaintiff; rushed out at him and made this violent attack on the main street of the town in the day time and in full view of all who passed by. The defendant, though older, appears to have been the more robust of the two men. From the circumstances shown the jury could well find the existence of express malice. No justification for the attack was shown arising out of the immediate situation as the parties met on the street. The defendant did tell a story that the plaintiff had a linotype belt in his hand, raised it as though to strike the defendant, and the latter merely cuffed him to keep him off balance. The verdict indicates that this story was entirely discredited by the jury.

The plaintiff was in delicate health. The attack made him ill. He received rather severe blows, particularly on his left ear. His doctor, upon examination, found him to be nervous, excited and with severe headache and ringing of the ear attended by considerably increased blood pressure. He stated that such an experience could prove fatal to one of plaintiff's health. The attack and the attendant circumstances caused him not only physical pain and mental suffering but also naturally entailed considerable embarassment, humiliation and outrage of feelings, all of which could properly be considered by the jury in awarding the $500 general damages. Plaintiff was confined almost en-

tirely to his bed for over a month, during which time the paper suffered sufficient loss of income to justify the award of $500 special damages. As above stated, defendant's attack is specifically against the $1,000 punitive damages as being disproportionate to the general and special damages.

In *Falkenberg* v. *Neff*, 72 Utah 258, 269 P. 1008, 1013, the court speaking of exemplary damages announced:

"* * * There is no definite basis upon which the amount can be computed, but there must necessarily be a limit to the amount which may be awarded. It is the general rule that the award should not be disproportionate to the actual damage sustained, or should bear some relation to the injury complained of and the cause thereof. * * *"

In that case, punitive damages of $5,000 were reduced by this court to $1,500 where the actual damages awarded were only $362.50, which is greatly at variance with appellant's contention as to what the proper ratio is between actual and punitive damages.

Cases from other jurisdictions involving a ratio similar to that in the *Falkenberg* case are *Anderson* v. *Snell*, 57 Nev. 78, 83, 62 P. 2d 703, $500 exemplary damages, $100 actual damages. *Karney* v. *Boyd*, 186 Wis. 594, 203 N. W. 371, $300 exemplary, $50 compensatory. *Calkins* v. *Engle*, 221 Mo. App. 1173, 300 S. W. 997, $6,500 punitive, $1,000 actual. For other cases to like effect see annotation 123 A. L. R. 1136; 16 A. L. R. 788; 6 C. J. S., Assault and Battery, § 56, p. 908.

Punitive or exemplary damages are awarded as a punishment to the defendant for malicious conduct and as a wholesome warning to defendant and others not to engage in similar indiscretions. 123 A. L. R. 1119; 16 A. L. R. 780; 6 C. J. S., Assault and Battery, § 55, pp. 901 & 902. Because there is no method of precise calculation as to the quantum of such damages, the amount thereof must necessarily be left to the sound discretion of the jury as related

to the facts and circumstances in each individual case. The only limitation thereon is that they must not be so disproportionate to the injury and the actual damage as to plainly manifest that they were the result of passion and prejudice rather than reason and justice applied to the existing facts. 123 A. L. R. 1136, et seq. and cases there referred to. The damages awarded herein do not transgress that rule, and verdict of the jury will not be disturbed.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and WADE, McDONOUGH and HENRIOD, JJ., concur.